[Civ. No. 9998.   Third Dist.   Mar. 16, 1961.]

ANTHONY R. COELHO, Individually and as Executor, etc., Appellant, v. ANTONETTE SANFILIPPO, Individually and as Executrix, etc., et al., Respondents.

Carlos J. Badger and David G. Danford for Appellant.

Gant & Gant and Cleveland J. Stockton for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment decreeing that plaintiff take nothing in an action brought to recover damages for breach of an agreement for purchase and sale of real property.

Prior to November 28, 1955, S. C. Sanfilippo, now deceased, his wife Antonette, Lamon J. Wright and his wife Ruby were owners in common of a ranch property known as "The Sanfilippo Ranch." Record title stood in the name of the Wrights. On November 28, 1955, S. C. Sanfilippo listed the property for sale with one Frank Perrotta, a San Jose, California, realtor. On the next day plaintiff and his brother Thomas, now deceased, together with Mr. and Mrs. Sanfilippo, executed a deposit receipt. The Wrights did not join either in the listing or in the deposit receipt. Nevertheless, in March of 1956, the Sanfilippos and the Wrights executed a deed of the property to the Coelhos, together with sellers' instructions and deposited both documents in escrow with the Stanislaus County Title Company. Thereafter, the buyers' instructions of the Coelhos were placed in the same escrow file and the sale was consummated.

Plaintiff contends that there was a breach of contract in that the sale was one of real property by the acre and, more specifically, was the sale of vineyard by the acre at the agreed price of $650 per acre; that there was a shortage of both land and of land in vineyard. He seeks damages. The deposited deed and the buyers' and sellers' escrow instructions described the property by the metes and bounds description found in the record title. Therein no mention was made of area planted to vineyard or of total acreage. The description is lengthy. After running for some 4,000 feet along section lines, the description leaves the section line and proceeds by metes and bounds to a junction with a stream described as Dry Creek

and then meanders down Dry Creek to another watercourse described simply as a "ravine"; thence meandering down the ravine to the point of beginning. Altogether, after leaving the section line, the description proceeds through forty-one courses of varying distances aggregating 12,946 feet. A surveyor, after a survey, computed the acres actually planted to vineyard as 177 acres, and found 46 additional acres not so planted. The part not so planted consisted generally of ranch roads, land occupied by buildings and other improvements, and of land lying outside the fences which enclosed the vineyard, but within the description. Some of this perimeter land was uncultivated and some used for pasturage. There was testimony that the ranch was commonly known as the Sanfilippo Ranch, and that the tax receipts ascribed a total of 236½ acres to the holding. When Sanfilippo listed the property for sale, and when he and his wife joined with the Coelhos in the signing of the deposit receipt they did not act as agent of the Wrights. Mr. Wright had not been consulted by Sanfilippo and knew nothing of the proposed sale through Perrotta. He was himself a broker and testified that when he first learned of the listing of the property and of the execution of the deposit receipts he was "furious" at not being, as he put it, allowed to sell his own property. Wright and the Sanfilippos had for some time been copartners and their affairs appear to have been somewhat involved. The partnership did not own the Sanfilippo ranch, but a part of its business was the operation of that ranch. Early in March of 1956, something over three months from the date of the deposit receipt, the Coelhos notified the Sanfilippos that unless the sale was consummated on or before March 13th the buyers would withdraw from the purchase of the property. Thereupon the Wrights and Sanfilippos agreed upon a dissolution of the partnership, and as a part of the dissolution agreement stipulated among themselves that they would go through with the sale of the Sanfilippo Ranch to the Coelhos. Specifically, the agreement said: "That the parties hereto hereby agree between themselves to accept the offer of Anthony Coelho and Thomas Coelho . . . to purchase Parcel III of Exhibit 'A' [the Sanfilippo Ranch], and to execute all the necessary documents to abide by the terms set forth in that certain deposit receipt dated November 29, 1955, between Anthony Coelho and Thomas Coelho . . . and signed by S. C. Sanfilippo. . . . ."

The listing agreement between Sanfilippo and Perrotta read as follows:

"Exclusive Listing Agreement

San Jose, Calif. Nov. 28 1955

"Location Waterford District. 237 acres in Vineyard, Stanislaus County and commonly known and designated as the Sanfilippo ranch.

"In consideration of the services of Frank Perrotta, hereinafter called broker, I hereby list with said broker, exclusively and irrevocably, for the period of time beginning Nov. 28, 1955, and ending Feb. 28, 1956, the property situated in the Waterford District, County of Stanislaus, California, as described above, and I hereby grant said broker the exclusive and irrevocable right to sell said property within said time for $650 per acre . . . ."

On the next day the Sanfilippos and the Coelhos executed the following document:

"Deposit Receipt

San Jose, California Nov. 29-1955

"Received from Anthony Coelho & Thomas Coelho . . . Five Thousand (5,000.00) Dollars as a deposit on account of purchase price of the following described property, situate in the Waterford District on Timbell Rd, County of Stanislaus, California: 237 acres in Vineyard with all improvements thereon and commonly known and designated as The Sanfilippo Ranch.

"The total purchase price is One Hundred Fifty Four Thousand & fifty (154,050.00) Dollars and the balance of same is to be paid within 10 days from date hereof, as follows:

"Terms of Sale: Buyer to pay above price as follows A 1st Deed of Trust for $130,000.00 secured by approx. 106 acres of land on Snell Rd. and balance of $24,050.00 in cash including above deposit to be paid at close of escrow. Seller to receive assignment of note for $130,000.00 plus assignment of lease hold. Seller to furnish bona fide lease to the satisfaction of purchaser. Purchaser to occupy house to Feb. 58. . . .

"That the evidence of title is to be in the form of a policy of title insurance issued by California Pacific Title Insurance Company, and paid for by the seller.

"That the property is sold subject to approval of owner. . . .

(Signed) Frank Perrotta

Real Estate Agent.

"I agree to purchase the above described property on the terms and conditions herein stated.

> (Signed) Anthony R. Coelho Trustee
> "      Anthony R. Coehlo
> "      Thomas J. Coelho Trustee
> "      Thomas J. Coelho
>
>                    Purchaser.

"I agree to sell the above described property on the terms and conditions herein stated, . . . .

> (Signed) S. C. Sanfilippo
> "      Antonette Sanfilippo
>
>                    Seller."

In order to ascertain the contract of purchase and sale between all four sellers and the buyers, the trial court received in evidence the listing agreement, the deposit receipt, the sellers' escrow instructions, the sellers' executed and deposited deed, the buyers' escrow instructions and the agreement between the sellers for the dissolution of the partnership existing between them. We think these matters were properly considered in view of the language of the listing agreement, the language of the deposit receipt and the reference thereto in the dissolution agreement and in the parties' escrow instructions.

The first description of the property is found in the listing agreement which described the property as "Location Waterford District. 237 acres in Vineyard, Stanislaus County and commonly known and designated as the Sanfilippo ranch." The listing agreement also granted to the broker the right "to sell said property within said time for $650 per acre." Multiplying 650 by 237 we arrive at a purchase price of $154,050. This listing agreement was followed by the deposit receipt which described the property as situate in the Waterford District on Timbell Road, county of Stanislaus, 237 acres in vineyard with all improvements thereon and commonly known and designated as The Sanfilippo Ranch. The total purchase price was stated at $154,050, but nothing was said as to a price per acre. It is to be noted that these two documents were executed without the knowledge or concurrence of the Wrights and that neither contained a description which the buyers or sellers would ordinarily consider to be an adequate legal description for purposes of conveyance. Such a description does not appear in contractual documents until the buyers' and sellers' escrow instructions were deposited

with the title company. That description made no reference to the vineyard or to the acreage. It was proper, therefore, for the court, as it did, to consider all of the inter-party documents to aid the court in ascertaining the contract made.

In view of the very irregular boundary, no one, not even an owner, could, without expert help, arrive at any more than a rough approximation of the acreage in the ranch; the same is true, though in lesser degree, of the acreage in vineyard. The ranch was primarily, indeed, almost exclusively, so far as the arable portions thereof be concerned, devoted to vineyard. Those parts not planted to vines, some within and some without the fence around the vineyard, were, in material part, lands not suitable for viticulture. Anyone buying a ranch could be charged with knowledge that, in the ordinary course of things, not every acre would be planted to vineyard. In any large body of land there must necessarily be areas in ranch roads, areas occupied by ranch buildings and waste areas. Aside from the somewhat vague statements made in those first two documents, there was no representation shown to have been made as to the exact number of acres in the ranch or as to the exact number of acres that had been planted to vines, and it does not appear that any inquiry was made by the purchasers touching those matters. When all of the facts and circumstances leading up to and following the consummated purchase are considered, along with all of the documents received in evidence in aid of the ascertainment by the court of the contract made, we find substantial support for the interpretation by the court of the contract, and for the declarations of the court construing its legal effect. The court could find, as it impliedly did, that the statements concerning acreage in the ranch and acreage in vineyard found in the first two documents were capable of meaning, were intended by the sellers to mean, and were understood by the buyers to mean, that the acreage statements were approximations and that the term ''in vineyard'' referred to the use to which the ranch was principally devoted. The court could infer that the statement in the listing agreement of 237 acres at $650, totaling a purchase price of $154,050, was capable of meaning, was intended to mean and was understood by the buyers as meaning, no more than a method of fixing the purchase price of the ranch. The court could infer that what the parties agreed to buy and sell was the Sanfilippo Ranch. The court could further infer that when the Wrights, not theretofore bound, joined the Sanfilippos in the sellers' instructions and

in the deed they understood the sale to be a sale in gross of the Sanfilippo Ranch for $154,050.

The court found that the contract of purchase and sale consummated through the title company was a contract between the four sellers and the buyers, evidenced by the escrow instructions of the sellers and the buyers. Although the deposit receipt was a good contract as between the Sanfilippos and the Coelhos, nevertheless the Sanfilippos could not convey all of the property and this the Coelhos knew before the escrow instructions were deposited, since the true state of the title had been reported. Therefore, the contract found in in the escrow instructions, admittedly a complete contract, was the only contract that embraced all of the owners as sellers and the finding of the trial court that this was the real contract under which the sale of the ranch was consummated is supported. The sale of the property, therefore, was, as the trial court found, ''a sale in gross and was not a sale by the acre nor a sale by the acre of vineyard.'' And the trial court properly further concluded ''that the sellers have conveyed to the buyers the real property which the sellers agreed to sell and the purchasers agreed to buy, and there has been no breach of contract.''

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 11, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1961.